IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ERIC P. DOUGLAS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 14-cv-3044-MDH |
| | ) |
| LARRY DENNEY, | ) |
| | ) |
| Respondent | ) |

## ORDER

Before the Court is Petitioner Eric Douglas's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. (Doc. No. 1). Respondent filed a "Response to Order to Show Cause," (Doc. No. 10), and Petitioner filed a Traverse. (Doc. No. 19). Therefore, the matter is now ripe for review.

Petitioner Eric Douglas is incarcerated at the Crossroads Correctional Center, Cameron, Missouri as a result of the sentence and judgment issued by the 31st Judicial Circuit, Greene County, Missouri. A jury found Douglas guilty of first degree assault and armed criminal action. The Circuit Court of Greene County sentenced Douglas to two consecutive terms of twenty-five years in prison. Petitioner's convictions were affirmed on direct appeal. *State v. Douglas,* 304 S.W.3d 756 (Mo. Ct. App. 2010). Petitioner filed a motion for post-conviction relief pursuant to Mo. Sup. Ct. R. 29.15, the denial of which was also affirmed. Respondent's Exhibit J.

Petitioner now seeks relief from this Court pursuant to § 2254. Petitioner raises five grounds for relief: 1) the trial court violated his right to due process by excluding evidence at trial; 2) the trial court violated his right to due process and his Sixth Amendment right to

confrontation by admitting notes into evidence that were found at the scene of the crime; 3) his due process rights were violated because the evidence was insufficient to establish his guilt; 4) his direct appeal counsel was ineffective in failing to raise an issue on appeal; and 5) trial counsel's failure to properly advise him about an alleged plea deal constituted ineffective assistance of counsel.

Respondent contends Petitioner's complaint regarding the exclusion of evidence is not cognizable under this Court's limited jurisdiction. Respondent further contends Petitioner's claims regarding the violation of his right to confront a witness; insufficient evidence to support a conviction; and ineffective direct appeal counsel are without merit because the determination by the Missouri Court of Appeals was reasonable and entitled to deference under §2254(d). Finally, Respondent argues Petitioner procedurally defaulted his claim of ineffective assistance of trial counsel by failing to raise it before the Missouri Court of Appeals.

## BACKGROUND

The following background is taken from the Missouri Court of Appeals' Opinion affirming Douglas's conviction and sentence:

> Appellant was convicted of shooting Kevin Chaison ("Victim") in the neck and buttocks in the early morning hours on July 25, 2006. In the light most favorable to the judgment, the evidence was that on the date of the shooting a utility worker, Matthew Young, observed a man and lady standing near a Neon automobile at the corner of Grant and Walnut; he subsequently heard some "popping noises," which caused him to look up. When he looked up, he saw a man in a "blue hoodie," firing a gun at a man, Victim, who had been near the Neon. The man in the blue hoodie continued to walk toward Victim as Victim tried to run away towards the back of a building. Mr. Young heard at least four to six shots being fired by the man in the blue hoodie but did not see any aggressive acts by the man who was shot. After the shooter stopped shooting, Mr. Young heard the lady say that she knew the shooter and that they would get him. Mr. Young was not able to identify the shooter, nor did he see the shooter point the gun at the lady.
>
> Retha Brown lived next to Appellant; she testified that sometime between 6:30 a.m. and 7:00 a.m., Appellant came to her house wearing a dark-colored hoodie.

2

Case 6:14-cv-03044-MDH   Document 20   Filed 05/08/15   Page 2 of 19

He appeared upset and stated that someone had broken into his house and stolen some things. He asked Ms. Brown to give him a ride to Walnut and Grant. Ms. Brown drove him to that location and dropped him off before going to work.

Rosalind Lee testified that she lived with Victim. On the evening prior to the shooting, Ms. Lee and Victim had an argument and Victim took her car, which was a Neon. Victim returned between 5:30 a.m. and 6:00 a.m., on the date of the incident. Shortly before 7:00 a.m., as Ms. Lee was getting in her car to go to work and Victim was standing on the passenger side of the car, Appellant walked down the street and called for Victim to come talk to him. Victim began to walk toward Appellant. Ms. Lee saw Appellant walk up to the back of the car and, while on the sidewalk, fire three shots.

She testified that she knew Appellant because he had dated her sister and knew he carried a .22 pistol. Appellant was wearing a blue hoodie, which was identified by Ms. Lee as the same one the shooter was wearing. The hoodie was found by the police in the alleyway close to the scene of the shooting, together with some .22 ammunition. Ms. Lee further testified that, after Victim was shot and ran to the rear of the apartment complex, Ms. Lee spoke to Appellant and said, "I know you're not going to shoot me with that gun;" however, Appellant then turned the gun on her and fired but it was out of ammunition. Appellant did not move until she told him the police were coming and then "broke and ran" to the west and away from the apartment complex.

Victim was lying on the ground in the back of the building with a bullet wound in his neck and bleeding from his mouth; he had also been shot in the buttocks. After Appellant fled, Ms. Lee put Victim in her car and drove him to the hospital. He remained in the hospital for one week with serious injuries, including a tracheal tube in his throat for part of the week.

Ms. Lee further testified that Appellant's mother, Gwendolyn Douglas, called her and offered her $500.00 if she failed to appear for court in this matter. Mrs. Douglas countered that testimony by stating that it was Ms. Lee who had contacted her a week before trial requesting money to not show up and testify against Appellant. Mrs. Douglas also claimed that Ms. Lee asked for money to help her hide from the police and that, on a previous occasion, Ms. Lee asked for money in exchange for not coming to court.

The police found "two pieces of paper that were folded up on the sidewalk that led from the front of the apartment complex over to the driveway to the east side of the [apartment] building" during their search of the grounds. The officer did not know who wrote on them, but both referred to Appellant by his first name or his first and last names. One gave a telephone number of Tonya Shockley and the other said "Amanda can't come until this afternoon" and had the words "Eric Douglas" where a signature would be.

3

> Victim did not testify. While he was on parole and supposed to be living in a St. Louis Release Center, he "walked away" prior to the trial and "never returned." After the shooting, Appellant went into hiding and was not seen by anyone or heard from by anyone for almost six months.

Respondent's Exhibit E; *State v. Douglas*, 304 S.W.3d 756, 759-60 (Mo. Ct. App. 2010)(internal quotations and footnotes omitted).

## LEGAL STANDARD

A district court shall entertain petitioner's application for a writ of habeas corpus if the person is in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). "Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record." *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. 1984). The state court's determination of factual issues shall be presumed to be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, the state courts' findings have fair support in the record and the petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous. Therefore, the Court defers to and adopts the factual findings of the state court.

## GROUND ONE

In Ground One, Petitioner argues the exclusion of telephone records during trial violated his due process rights. Respondent contends there was never proper foundation for admission of the telephone records at trial. Respondent further argues, even if there was proper foundation, the records would not have damaged the credibility of the witnesses and certainly did not fatally infect Petitioner's trial to render it fundamentally unfair.

4

Petitioner contends that the Missouri Court of Appeals failed to address this due process claim "in any manner whatsoever." However, the Missouri Court of Appeals stated the following with regard to Petitioner's argument pertaining to the phone records:

> In his final point, Appellant contends that the trial court erred in refusing to admit Appellant's mother's telephone records. Appellant claims that the records would have shown that Ms. Lee called Appellant's mother, not that Appellant's mother called Ms. Lee. Appellant did not offer the records into evidence nor did he make any offer of proof. As the trial court properly noted, there was an improper foundation as Appellant did not provide an appropriate business records affidavit to the State in advance of trial nor present testimony from a records custodian authenticating the accuracy of the records. The trial court denied the admission of the records, specifically stating that the records, even if properly presented, were an attempt to provide evidence on a collateral matter.
>
> To properly preserve a claim regarding the exclusion of evidence for review, a party must make an adequate offer of proof. *State v. Miller,* 172 S.W.3d 838, 853–54 (Mo. App. S.D. 2005). To be adequate, an offer of proof must establish what the evidence will be, its purpose and objective, and each fact necessary to establish its admissibility. *State v. Molina,* 272 S.W.3d 476, 478 (Mo. App. S.D. 2008). Appellant did not preserve this issue for appeal. He did not make any offer of proof, he did not submit the records to the trial court, and he did not follow basic foundational requirements for the admission of the notes.
>
> Despite these deficiencies, the trial court advised Appellant's counsel to proceed with putting on the evidence, even in the absence of a proper foundation, and stated it could be persuaded; however, Appellant's counsel did not do so. At no time were the records marked as an exhibit or offered. Trial counsel simply asserted that when the records were received, one of the entries would show that Mrs. Douglas received an incoming call from Ms. Lee. Thus, we review for plain error only. The trial court committed no error, plain or otherwise, in refusing the telephone records. ….
>
> Appellant argues that he had a constitutional right to present a complete defense and to a fair trial. That is a given. The problem with Appellant's argument is that he has not shown how the telephone records deprived him in any way of his complete defense. The trial court correctly ruled that the documents had no proper foundation. Even if Appellant had properly presented the records, how does a record of a phone call between Ms. Lee and Appellant's mother exonerate Appellant? Both parties contend there was a discussion regarding Ms. Lee not testifying at the trial. It is entirely a collateral matter as to whether Ms. Lee placed one call to Appellant's mother. There was testimony that Ms. Lee and Appellant's mother had more than one conversation. Even if the records showed that Ms. Lee had called Appellant's mother on that one occasion, it would not rebut any

5

> testimony at the trial. The phone records themselves do not rebut Ms. Lee's testimony regarding the offer of money not to testify. The jury heard testimony from Ms. Lee and from Appellant's mother on that issue. In both instances, there was no allegation that what Ms. Lee was going to testify to was false; that she, according to Appellant, offered not to testify in exchange for money does not assist Appellant. Her testimony was clearly not favorable to Appellant under either version. The trial court did not err as discussed in Point I in refusing the phone records. Appellant can further show no prejudice in the denial of the records concerning Ms. Lee's testimony given the testimony of Mr. Young and Ms. Brown.

Exhibit E; *State v. Douglas*, 304 S.W.3d 756, 762-64 (Mo. Ct. App. 2010)

Under 28 U.S.C. § 2254(d), this Court defers to the state court's rulings unless there is evidence that the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); (e)(1); *Estelle v. McGuire,* 502 U.S. 62, 67-8 (1991); *Sweet v. Delo,* 125 F.3d 1144, 1153 (8th Cir. 1997). Generally, evidence issues are not cognizable under federal habeas review. *Id.*

State trial courts are afforded wide discretion with evidentiary rulings. "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Rousan v. Roper,* 436 F.3d 951, 958 (8th Cir. 2006). "The exclusion of a witness based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair." *Skillicorn v. Luebbers*, 475 F.3d 965, 972 (8th Cir. 2007). In order for Petitioner to meet this burden he must show that absent the alleged impropriety the verdict probably would have been different. *Id.*

First, Petitioner's argument that the Missouri Court of Appeals failed to address his claim, "in any manner," regarding the exclusion of phone records is ridiculous. As set forth above, the Missouri Court of Appeals' Opinion provides a lengthy analysis in affirming the trial court's exclusion of the phone records. In addition, there is no evidence that the exclusion of the phone records constituted a denial of due process making the entire proceeding fundamentally unfair pursuant to 28 U.S.C. § 2254(d). Both women testified at trial regarding their alleged conversations and who initiated the phone calls. While the witnesses' testimony was conflicting, this Court agrees with the Appellate Court - the phone records would not have changed the unfavorable testimony regardless of what they have may have shown regarding who initiated one of the phone calls. Petitioner cannot establish that absent the alleged exclusion of the phone records the verdict would have been different. Petitioner's first ground for relief is denied.

## GROUND TWO

Petitioner next argues the trial court's admission of two notes found at the scene of the shooting violated his due process rights and his Sixth Amendment right to confrontation. Respondent contends the Missouri Court of Appeal's determination, upholding the trial court's ruling, is reasonable and entitled to deference. Respondent further argues the Court's analysis is not contrary to, nor an unreasonable application of clearly established federal law.

The Missouri Court of Appeals upheld the trial court's ruling on the admission of the two notes found at the scene stating:

> Appellant claims the two notes found at the apartment complex should not have been admitted because there was not a sufficient foundation, the prejudicial effect substantially outweighed the probative value, and the admission prevented Appellant the right to confront his accusers. Frankly, we have trouble following Appellant's argument. Appellant admits that the trial court has broad discretion in admitting or excluding evidence at trial and that we review the trial court for prejudice and not mere error. Appellant argues that the admission of the notes, which in no way connect Appellant to the commission of the shooting, "screamed

7

> to the jury, '[Appellant] was here.' " There was not any question that Appellant was near the apartment complex at some time. The testimony was that Victim lived with Ms. Lee at 632 Walnut, an apartment complex located near the intersection of Walnut and Grant, and Ms. Brown gave Appellant a ride to Walnut and Grant on the morning of the shooting. The notes did not unfairly connect Appellant to the actual shooting.
>
> Furthermore, Appellant's argument that the notes violated the confrontation guaranties of the state and federal Constitutions is wholly undeveloped in his argument. Appellant simply states that the trial court deprived Appellant of his constitutional rights to confrontation and the effective assistance of counsel when admitting the notes made it impossible for trial counsel to subject the notes to the full gamut of adversarial testing. Appellant argues that the notes were found in a place that was contrary to where Ms. Lee testified the assailant was. As we noted in Point I, the jury could consider the testimony of Ms. Lee. The jury could also consider the location of the notes. The notes did not connect Appellant with the actual shooting, only to the apartment complex. One of the notes was a phone number of a female, the second about another female. Neither of those people had any relationship to the shooting. The notes were non-testimonial in that they were not offered for the truth of the matter contained in the notes. The notes were admitted because they contained Appellant's name and were found at the scene of the crime, indicating that Appellant had possibly been in the vicinity at some time. We can find no prejudice to Appellant. Point II is denied.

Exhibit E; *State v. Douglas*, 304 S.W.3d 756, 762 (Mo. Ct. App. 2010)(internal citations omitted).

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 2273, 165 L. Ed. 2d 224 (2006). This provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* Only testimonial statements cause the declarant to be a "witness" within the meaning of the Confrontation Clause. *Id.* "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id.*

Here, the Missouri Court of Appeals determined that the notes were not testimonial because the content of the notes was not being offered for the truth of the matter asserted. Both notes contained the phone numbers of females, neither of which had any relationship to the shooting. This Court agrees, the notes were non-testimonial in that they were not offered for the truth of the matter contained in the notes, but rather as evidence that Petitioner was possibly near the scene of the shooting. The jury could determine what, if any, evidentiary value to give the notes during their deliberation. For the reasons set forth herein, this Court denies ground two because there is no evidence the Court's analysis is contrary to, or an unreasonable application of clearly established federal law.

## GROUND THREE

Petitioner argues that there was insufficient evidence to convict him beyond a reasonable doubt. Specifically, Petitioner contends the victim did not testify and the witness who did testify was "so riddled with contradictions that [her testimony] was unworthy of belief." Respondent argues the evidence at trial was sufficient and the Missouri Court of Appeal's decision was not objectively unreasonable.

> The Court of Appeals denied Petitioner's argument regarding this claim, stating:
>
> Appellant argues that only Ms. Lee identified Appellant as the assailant, but her testimony was too internally contradictory to make a submissible case against Appellant. His argument appears to be that Ms. Lee's testimony violates the doctrine of destructive contradictions. This doctrine requires that a witness's testimony at trial be so inconsistent and contradictory as to rob the testimony of any probative value. *Fears,* 217 S.W.3d at 328. Mere discrepancies, however, in the witness's testimony are not sufficient to invoke the doctrine; instead, the conflict must concern vital points or elements. *Id.* Furthermore, the doctrine does not apply to contradictions about collateral matters. *State v. Cole,* 148 S.W.3d 896, 902 (Mo. App. S.D. 2004).
>
> Appellant argues that Ms. Lee's testimony concerning where the car was parked after Appellant returned the car, whether Appellant went to the east side of the building, whether Appellant called to Victim during the assault, and the

9

relationship between Appellant and Ms. Lee's sister was inconsistent enough to nullify all of her testimony. We disagree. First, although Appellant makes much of the testimony that Ms. Lee refers to the street where the car was located as "West Walnut" and "Walnut," we find this testimony to not even pass the first hurdle that it be inconsistent. Clearly, there was one street, which can be called "Walnut" or described as "West Walnut." Likewise, Ms. Lee's description of Appellant as her sister's ex-boyfriend on one occasion and "us[ing] the present tense" to describe the relationship on a separate occasion has nothing to do with any issue in the case. There was no inconsistency in Ms. Lee's testimony regarding Appellant's identity, Appellant's blue hoodie, the gun, or the firing of the shots. A careful review of Ms. Lee's testimony indicates no inherently contradictory statements on a vital point or element such that reliance on the testimony is necessarily precluded. The supposed inconsistencies simply created questions for jury resolution. *Fears,* 217 S.W.3d at 328.

We further note that even if Ms. Lee's testimony regarding Appellant's presence at the scene was excluded, the testimony of Mr. Young that he saw a person with a blue hoodie at the scene, heard shots and heard Ms. Lee's comments that she knew the shooter, combined with Retha Brown's testimony that she knows Appellant, that he was wearing a dark hoodie, and that she brought him to the crime scene, certainly created evidence from which a jury could determine that Appellant was the shooter.

   \*\*\*

Appellant's third basis for his claim that there was insufficient evidence to make a submissible case against him is that the State could have, and should have, produced Victim. Appellant fails to explain how the lack of Victim's testimony negates a submissible case against Appellant. Appellant claims the prosecutor argued that Appellant went to Victim's apartment complex to shoot him because Victim had broken into his home and taken things. In a bizarre analysis, Appellant then claims [o]n the prosecution's theory of the case, [A]ppellant ran afoul of the law not in shooting [Victim], but in not being quick enough about it. Mo.Rev.Stat. Section 563.031.2(2) entitles a person whose residence is being burglarized to use deadly force, and subsection 3 makes clear that he or she had no duty to retreat rather than using deadly force.

Appellant's "argument" is nonsense. There was no testimony that a burglary was taking place at Appellant's home at the time of the shooting. There was no evidence that a burglary was in progress at all, nor does section 563.031.2 allow the victim of a burglary to shoot the alleged burglar at the burglary victim's convenience.

Furthermore, Appellant does not indicate how the State could have produced Victim other than to recite the tax base of the State and the monopoly that the State and federal government have "on the legitimate use of force and violence,"

10

> and to argue that the State could have invoked a cooperative agreement to enlist the federal government in finding Victim. In essence, Appellant argues that the State just did not try hard enough to find Victim, but he fails to argue what obligation the State had to produce Victim for trial. We know of none. As noted, there was sufficient evidence to convict Appellant of both crimes without the testimony of Victim. Point I is denied.

Exhibit E; *State v. Douglas*, 304 S.W.3d 756, 760-62 (Mo. Ct. App. 2010).

A federal court's scope of review for a claim for insufficient evidence to support a conviction is "extremely limited." *Sera v. Norris,* 400 F.3d 538, 543 (8th Cir. 2005). It is not relevant whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt, rather, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* This Court must recognize that it is the province of the fact-finder, not this court, "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

"A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011).

First, the Petitioner argues that the prosecution did not put on testimony from the alleged victim of the assault and therefore there was insufficient evidence regarding his "serious physical injuries." Further, Petitioner argues there was only evidence regarding the victim's injuries from "other witnesses" and not from the victim or his treating physicians. Petitioner also claims the absence of the victim precluded the jury from hearing relevant evidence regarding "possible

11

provocation or sudden passion" that could have mitigated the offense to a lesser crime. Petitioner argues the insufficient evidence presented to the jury did not meet the statutory definition of serious physical injury for the jury to convict Petitioner. Under this Court's limited scope of review Petitioner's arguments do not establish that a rational trier of fact could not have agreed with the jury's verdict based on the evidence presented at trial.

Next, Petitioner argues the only eyewitness, Ms. Lee's, testimony was so inconsistent it lacked credibility and should have been precluded. The Missouri Court of Appeals rejected Petitioner's argument that the doctrine of "destructive contradictions" should have precluded the witness's testimony. This Court agrees. Any inconsistencies in Ms. Lee's testimony could be resolved by the jury. Again, under this Court's limited scope of review Petitioner's arguments do not establish that a rational trier of fact could not have agreed with the jury's verdict.

Therefore, after careful review of the record in this case, this Court denies Petitioner's Ground Three. There is no evidence that the state court's decision is objectively unreasonable and further, under this Court's extremely limited scope of review there is no evidence that a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt.

**GROUND FOUR**

Petitioner claims in Ground Four that his counsel on direct appeal was ineffective in failing to raise an issue on appeal regarding his mother's testimony of his prior imprisonment. Respondent argues this claim was raised before the Missouri Court of Appeals, which denied relief, and that the Missouri Court of Appeals determination is entitled to deference and was a reasonable application of clearly established federal law.

To establish an ineffective assistance of counsel claim, a petitioner must first satisfy the high standard set forth in *Strickland* by showing that: (1) counsel's performance fell below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney; and (2) petitioner was prejudiced to the extent that the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-688, 104 S.Ct. 2052, 2064-65, 80 L.E.d2d 674 (1984); see also *United States v. Martinez-Salinas,* 573 F.3d 595, 598-599 (8th Cir. 2009); *Parker v. Bowersox*, 94 F.3d 458, 461 (8th Cir. 1996); *Gee v. Groose*, 110 F.3d 1346, 1352 (8th Cir. 1997).[1]

If Petitioner can establish the two elements under *Strickland*, then he must show that the state court's adjudication of his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See *Owens v. Dormire,* 198 F.3d 679, 681 (8th Cir. 1999); *Thai v. Mapes,* 412 F.3d 970, 975 (8th Cir. 2005); 28 U.S.C. § 2254(d)(1),(2).

The Missouri Court of Appeals denied Petitioner's claim for relief stating:

> ….In addition, "the U.S. Supreme Court has held that 'appellate counsel who files a [brief challenging the merits of the case] need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.'" *Sanfillippo v. State,* 143 S.W.3d 765, 769 (Mo. App. S.D. 2004), citing *Smith v. Robbins,* 528 U.S. 259, 288 (1965).
>
> Declaring a mistrial is a drastic remedy that should be granted only in extraordinary circumstances. *State v. Vincent,* 59 S.W.3d 34, 36 (Mo. App. E.D.

---

[1] Petitioner argues the Missouri Court of Appeals applied a more onerous test for receiving a new trial to Petitioner's claim and that "it is much easier for a criminal defendant to establish *Strickland* prejudice." This Court applies the *Strickland* standard to Petitioner's claim, while also reviewing whether the Missouri Court's determination is contrary to or involved an unreasonable application of clearly established federal law.

13

2001). The factors to be considered in determining whether a mistrial is appropriate are:

> (1)[W]hether the statement was voluntary and unresponsive; (2) whether the statement was singular and isolated or emphasized by the prosecution; (3) whether the statement was vague and indefinite, or made specific references to a crime committed by the accused; (4) if the court promptly sustained defense counsel's objection to the statement and admonished the jury to disregard the statement; and (5) if the comment played a decisive role in the determination of guilt in view of other evidence presented and the strength of the prosecution's case.

*Id.*

> The testimony Movant alleges warranted a mistrial came from defense witness, Gwendolyn Douglas. On cross examination, she was asked how long her son had known Robin Torrence, and Ms. Douglas responded that "he met her when he came home from prison." Trial counsel subsequently requested a mistrial which this Court denied. Trial counsel then requested a curative instruction advising the jury to disregard the statement, and this Court admonished the jury accordingly.

Exhibit J (internal citations omitted).

The Court of Appeals went on to analyze the affidavit from appellate counsel regarding why he did not pursue this issue on direct appeal and stated:

> Having reviewed the trial transcript, this Court finds that the statement was unresponsive to the question the prosecutor had asked. This was the only reference throughout the trial to Movant having been in prison. The statement did not mention a specific crime committed by Movant. The Court promptly sustained defense counsel's objection and pursuant to defense counsel's request instructed the jury to disregard the statement. Finally, the comment was never mentioned again either by the prosecution or the defense and could not have played a decisive role in the jury's verdict. As a result, a mistrial was not appropriate in this situation. Furthermore, the Court granted the relief that was requested by the defense.
>
> Consequently, this Court finds based on the facts of the case and the testimony by affidavit of Appellate Counsel, that the non-responsive statements of the defense witness did not warrant declaring a mistrial and that there was no reasonable probability that the result of Movant's direct appeal would have been any different had Appellate Counsel raised this issue on appeal.

14

> In sum, Movant did not receive ineffective assistance of appellate counsel regarding not raising the trial court's denial of Movant's request for mistrial. In addition, Movant did not prove he was prejudiced. Movant's claim (b) is denied.

Exhibit J.

Here, there is no evidence the Missouri Court of Appeals' analysis was contrary to, or an unreasonable application of, clearly established federal law. The Missouri Court of Appeals analyzed not only whether Petitioner should have been granted a mistrial, but also, Petitioner's direct appeal counsel's determination regarding which issues to raise in his appeal. There is no evidence the Missouri Court of Appeals determination should not be given deference under § 2254(d). Therefore, after a careful review of the record before this Court, the Court denies Ground Four.

## GROUND FIVE

Petitioner's Ground Five is a claim of ineffective assistance of trial counsel. Petitioner argues his trial counsel failed to properly advise him regarding the State's alleged plea offers. Here, Petitioner failed to raise his ineffective assistance of counsel argument before the Missouri Court of Appeals and as a result Respondent argues he has procedurally defaulted his claim.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo,* 54 F.3d 1371, 1381 (8th Cir. 1995), *cert. denied,* 516 U.S. 1056 (1996). In order to exhaust state remedies, an appellant must present the "substance" of the claim to state courts. *Anderson v. Harless,* 459 U.S. 4, 6 (1982). A Petitioner procedurally defaults his claim by failing to raise it in either his direct appeal or in his Rule 29.15 appeal. See *Sweet v. Delo,* 125 F.3d at 1149.

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

15

federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Further, "when a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013).

Petitioner argues he is entitled to a hearing under *Martinez v. Ryan,* 132 S.Ct. 1309 (2012). In *Martinez* the Court stated, "[t]hese rules reflect an equitable judgment that only where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default." *Martinez v. Ryan,* 132 S. Ct. 1309, 1318-19, 182 L. Ed. 2d 272 (2012), citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel, or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

*Martinez v. Ryan,* 132 S. Ct. 1309, 1318-19, 182 L. Ed. 2d 272 (2012).

16

Case 6:14-cv-03044-MDH   Document 20   Filed 05/08/15   Page 16 of 19

Here, it is undisputed Petitioner did not raise this claim before the state courts and that he was represented by counsel. However, Petitioner contends his motion court counsel was objectively deficient in not raising this issue and that he can establish both cause and prejudice in order to have his procedurally defaulted claim reviewed by this Court. Petitioner argues an evidentiary hearing is necessary to develop the facts regarding whether Petitioner's post-conviction counsel was ineffective in failing to raise this issue and whether his claim should be procedurally barred.

Under § 2254 the standard for a hearing is as follows:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
    (A) the claim relies on--
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Here, Petitioner has offered no evidence to excuse the procedural default of this claim.[2] Further, Petitioner has offered no evidence entitling him to a hearing under § 2254. While Petitioner claims he can provide evidence "necessary to fully develop the facts" he has failed to produce any evidence regarding the alleged plea offer. Petitioner's Traverse states "at the outset of trial, he learned of the fact that the prosecution had offered him, at an earlier stage of the case,

---

[2] "Not all attorney error amounts to ineffective assistance of counsel. In determining whether counsel made serious errors, the standard to which an attorney is held is not that of the most astute counsel, but rather that of 'reasonably effective assistance."
*Williams v. Booker*, 454 F. App'x 475, 479 (6th Cir. 2012); citing, *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir.1994)(quoting Strickland, 466 U.S. at 687). Strickland does not demand perfection from attorneys. *Id.* Therefore, we "will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.*

a plea bargain for seven years on a lesser offense. This offer was not communicated to him until after this offer had been withdrawn." Petitioner further argues he discussed this with post-conviction counsel. However, other than Petitioner's argument in his Traverse, there is no evidence in support of these allegations, and Petitioner again, never raised this issue in state court. Here, the necessary elements for a federal evidentiary hearing under § 2254 have not been met. In addition, as set forth herein, there is no evidence of ineffective assistance of counsel under the standards set forth in *Strickland.*

Therefore, after a careful review of the record, this Court finds Petitioner's claim is procedurally barred and Petitioner has provided no cause for default or prejudice. As previously stated herein, Petitioner has failed to show a constitutional violation which would have resulted in a different outcome at his trial proceeding.

## **CERTIFICATE OF APPEALIBILITY**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

WHEREFORE, it is **ORDERED** that:

1) The petition for writ of habeas corpus is **DENIED**;

2) The issuance of a certificate of appealability is **DENIED**; and

3) The case is dismissed with prejudice.

**IT IS SO ORDERED.**

Date:  May 8, 2015                                  */s/ Douglas Harpool*_____
                                                                **Douglas Harpool**
                                                                **United States District Judge**